## DECLARATION OF JEANIE WILLIS

STATE OF FLORIDA )

COUNTY OF ORANGE )

BEFORE ME, the undersigned authority, personally appeared Jeanie Willis, who, after first being duly sworn, deposes and states that she is over 18 years of age, and is competent to testify as to the following matters as to which she has personal knowledge:

1. My name is Jeanie Willis. I am the payroll manager for Wyndham Vacation Ownership ("WVO"). In this role I oversee processing of payments made for all sales representatives employed by WVO. Part of my responsibility is to ensure payroll is administered correctly for sales representatives.

2. Wyndham keeps records of hours worked and paid as reflected in the "Wyntime" electronic time-keeping system. Wyndham also keeps records reflecting commissions and bonuses earned and paid, and other payroll information including products sold, contracts executed, and contracts rescinded.

## COMPENSATION OF SALES REPRESENTATIVES

3. The various components of payroll for sales representatives are complex, interrelated, and dynamic. Attached as **Exhibit A** to this Declaration is a true and correct copy of a document titled "Calculating Payroll for Sales Commission Employees." This document outlines the method of how sales representatives are paid.

4. In-House and Frontline representatives receive a "recoverable draw," which is an amount equal to the minimum wage for every hour worked by the representatives in a given week. The draw is paid weekly and is an advance against the representative's future commissions which is recoverable by Wyndham when the representative earns enough in commissions to cover the amount advanced. If the representative does not earn enough in commissions to pay back the

advanced draw, the remaining amount of the advance is considered a "draw balance" that will be carried forward from pay period to pay period for an indefinite amount of time until the draw balance is fully recovered or until the employee's employment is terminated. The draw system ensures that representatives are compensated at least minimum wage for all hours reported under 40 in a work week and 1.5 times the minimum wage for hours reported over 40 in a work week.

5. Sales representatives are covered by various commission and bonus pay plans based upon the location, product sold, position, experience and other individual factors. Regular (non-overtime) compensation is intended to cover all work performed within that week. The commission and bonus plans for sales representatives vary in the criteria required to earn the commission and/or bonus as well as the percentage of commission and/or bonus earned. Some of the criteria that vary are "bonus hurdles" which are the threshold amounts at which a representative receives the next level of bonus on sales, "bumps" which are a credit that increases the total sales volume on which the representative is paid commissions and bonuses, and SPIFs which are incentives such as a gift card for making the first sale of the day. The commission and bonus plans for sales representatives change quarterly to take into account the projected sales goals at the site according to the economy, the season, and other factors.

6. In addition to the draw and applicable commissions and bonuses, Wyndham also pays sales representatives overtime compensation when a sales representative works more than 40 hours in a workweek. Overtime pay is determined by calculating a sales representative's regular rate of pay and multiplying the hours worked over 40 by 0.5 times the regular rate. Overtime is calculated and paid on any commission adjustments that impact commissions and bonus payments. A separate overtime calculation based on the sales representative's regular rate of pay is made for each category of compensation (regular, commission, bonus or other) paid to the employee.

## CALCULATING THE EARNINGS OF WAYMON HUDGENS

7.      **Exhibit B** to this declaration is an earnings statement of Waymon Hudgens for the pay period of February 1, 2013 through February 7, 2013. **Exhibit B** identifies that Hudgens recorded 42.75 hours during this pay period. As a result Hudgens was paid $32.13 in overtime pay based on his hourly draw pay. This overtime pay is reflected on **Exhibit B** under the payroll category "Comm Draw OT." Sales representatives are also eligible to receive overtime pay on any contracts executed in the week in which the sales representative worked over 40 hours. For the pay period ending February 7, 2013, Hudgens made three sales that were eligible for commission and bonus payments. *See* **Exhibit C** and **Exhibit D**.

8.      Contract 1 was sold on February 2, 2013. Hudgens earned a commission of $706.58 for Contract 1. He also earned a bonus of $235.53. The commission payment for Contract 1 is reflected on the earnings statement for the pay period ending February 14, 2013 (roughly two weeks after the contract was executed). The bonus payment for Contract 1 is reflected on the earnings statement for the pay period ending March 14, 2013 (roughly six weeks after the contract was executed). Hudgens also was paid overtime based on the commission and bonus attributable to Contract 1. Specifically, Hudgens earned $22.73 in overtime compensation for the Contract 1 commission that was paid as reflected in the earnings statement for the pay period ending February 14, 2013. Hudgens earned $7.58 in overtime for the Contract 1 bonus that was paid as reflected in the earnings statement for the pay period ending March 14. 2013.

9.      Contract 2 was sold on February 4, 2013. For Contract 2, Hudgens earned a commission of $368.08 and a bonus of $245.39. The commission payment for Contract 2 is reflected on the earnings statement for the pay period ending February 14, 2013 (roughly two weeks after the contract was executed). The bonus payment for Contract 2 is reflected on the earnings statement for the pay period ending March 14, 2013 (roughly six weeks after the contract was

executed). Hudgens also was paid overtime based on the commission and bonus attributable to Contract 2. Hudgens earned $11.84 in overtime compensation for the Contract 2 commission that was paid as reflected in the earnings statement for the pay period ending February 14, 2013. Hudgens earned $7.89 in overtime for the Contract 2 bonus that was paid as reflected in the earnings statement for the pay period ending March 14, 2013.

10. Contract 3 was also sold on February 4, 2013. Hudgens earned a commission of $835.46 and a bonus of $278.49. The commission payment for Contract 2 is reflected on the earnings statement for the pay period ending February 14, 2013 (roughly two weeks after the contract was executed). The bonus payment for Contract 2 is reflected on the earnings statement for the pay period ending March 14, 2013 (roughly six weeks after the contract was executed). Hudgens earned $26.87 in overtime compensation for the Contract 3 commission. Hudgens earned $8.96 in overtime for the Contract 3 bonus paid, respectively, on February 14, 2013 and March 14, 2013.

## CALCULATING THE EARNINGS OF MATTHEW JONES

11. **Exhibit E** to this declaration is an earnings statement of Matthew Jones for the pay period of October 12, 2012 through October 18, 2012. **Exhibit E** identifies that Jones recorded 41.00 hours during this pay period. As a result, Jones was paid $11.51 in overtime pay based on his hourly draw pay.

12. Jones received commissions and bonuses for ten sales for the pay period between October 12, 2012 and October 18, 2012. *See* **Exhibits F - H**. Three of these commissions indicate that he was "SELLING REP 2," which indicates that he split a deal with another sales representative.

13. Seven of these commissions state "MANAGER," which indicates that Jones received commissions for being the manager on duty at the time of the sale.

14. For Contract 1 on October 13, 2012, Jones earned a manager commission of $40.75 plus an overtime payment of $0.50. These amounts were paid in Jones' paycheck for the pay period ending October 25, 2012. *See* **Exhibit F**.

15. For Contract 2 on October 15, 2012, Jones earned a manager commission of $21.20, plus an overtime payment of $0.26. These amounts were paid in Jones' paycheck for the pay period ending October 25, 2012. *See* **Exhibit F**.

16. For Contract 3 on October 15, 2012, Jones earned a manager commission of $71.28 plus an overtime payment of $0.87. These amounts were paid in Jones' paycheck for the pay period ending October 25, 2012. *See* **Exhibit F**.

17. For Contract 4 sold on October 15, 2012, Jones earned a SellingRep 2 commission of $752.52, plus an overtime payment of $9.18 based on this commission. *See* **Exhibit F**. The commission and corresponding overtime payment were paid in Jones' earnings for the pay period ending October 25, 2012. *See* **Exhibit F**. For Contract 4, Jones also earned a SellingRep 2 bonus that amounted to $627.10, plus overtime based on the bonus payment amounting to $7.65. *See* **Exhibit G**. The bonus and corresponding overtime payment were paid in his earnings for the pay ending November 22, 2012. *See* **Exhibit G.**

18. For Contract 5 sold on October 16, 2012, Jones earned a SellingRep 2 commission of $1,043.88, plus an overtime payment based on these commissions amounting to $12.73. *See* **Exhibit H**. These payments were made to Jones in his paycheck for the pay period ending November 1, 2012. Jones also earned a $869.90 bonus for Contract 5, with a $10.61 bonus overtime payment. *See* **Exhibit G**. The bonus and corresponding overtime payment were paid to Jones in his earnings for the pay period ending November 22, 2012.

19. Jones received a $44.15 Manager Commissions and $0.54 overtime payment for Contract 6 sold on October 16, 2012. These were paid to him in his earnings for the pay period ending November 1, 2012.

20. For Contract 7 sold on October 17, 2012, Jones earned a SellingRep 2 commission of $648.84, plus an overtime payment based on this commission amounting to $7.91. These payments were paid to Jones in his earnings for the pay period ending November 1, 2012. Jones also earned a $540.70 bonus for Contract 7, with a $6.59 overtime payment. The bonus and corresponding overtime payment were paid to Jones in his earnings for the period ending November 22, 2012.

21. Jones received $60.60 in Manager Commissions and $0.74 in corresponding overtime payments for Contract 8 sold on October 17, 2012. These payments were made in Jones' earnings for the pay period ending November 1, 2012.

22. Jones received $31.00 in Manager Commissions and $0.38 in corresponding overtime payments for Contract 9 sold on October 18, 2012. These payments were made in Jones' earnings for the pay period ending November 1, 2012.

23. Determining a sales representative's compensation in a given week is subject to various adjustments for up to one year. This compensation may change multiple times for a given sales representative for up to one year. For example, a contract may be cancelled for up to one year after it is signed and therefore the funds attributed to this sale recovered by the company for up to one year. When contracts are cancelled, the sales representative's compensation is affected as well as eligibility for bonuses. Commissions recovery requires the recalculation of the regular rate of pay, and thereby the overtime rate of pay, not for the work week in which the commission was recovered, but rather for the work week in which the commission was earned, *i.e.* the work week in which the contract was sold.

24. Compensation to sales representatives is calculated assuming the hours recorded in WynTime as hours worked are accurate. If it were determined that the hours were not accurate and the sales representative actually worked over 40 hours in a week, Wyndham's overtime rate would need to be recalculated as outlined in Exhibit A. Such pay re-calculations would need to be done on an individual basis, contract-by-contract.

25. As demonstrated above, it is virtually impossible to calculate a sales representatives' regular rate of pay by looking at the earnings statement alone. This is consistent with Exhibit A, p. 7, which states "if the contract was written four weeks ago, and the commission is paid this week, it is necessary to determine how many hours were worked four weeks ago when the contract was written to see if overtime pay is due on that commission." To determine whether Jones was paid overtime on the draw pay, the commissions, and bonus payments for the pay period of October 12, 2012 through October 18, 2012, I needed to review earnings statements from 4 different time periods (earnings statements ending October 18, 2012, October 25, 2012, November 1, 2012, and November 22, 2012). These earnings statements are attached as **Exhibits E** and **I**. I also needed to review commission statements (for the contract period October 9, 2012 to October 15, 2012, October 16, 2012 to October 22, 2012, and November 6, 2012 to November 12, 2012). These commission statements are attached as **Exhibit F-H**.

## THE PLAINTIFF AND OPT-IN PLAINTIFFS' WORK HISTORY WITH WYNDHAM

26. I have reviewed the pay records, work histories, and time records of Waymon "Tucker" Hudgens, Matthew Jones, Scott Raven, Elwyn "Don" Smith, Lindsay Rucker, and Christina Hammer.

### Waymon "Tucker" Hudgens

27. Waymon "Tucker" Hudgens worked at Emerald Beach Resort as an In-House Sales Representative between April 20, 2012 and June 4, 2013.

28. Exhibit J to this Affidavit is a summary of the hours for which Hudgens and the Opt-in Plaintiffs were paid from August 29, 2011 to the end of their employment with Wyndham.[1]

29. In the 56 weeks that Hudgens worked as an In-House Sales Representative at Emerald Beach Resort between April, 2012 and the end of his employment, Hudgens recorded more than 40 hours in 3 weeks, and was paid the applicable overtime rate of pay for his hours worked over forty. He was paid for as much as 7.00 hours of overtime in one week.

30. Hudgens recorded between 38.00 and 40.00 work hours in only 6 work weeks during his tenure as an In-House Sales Representative at Emerald Beach Resort.

31. Hudgens recorded less than 38.00 work hours in the remaining 50 work weeks that he worked as an In-House Sales Representative at Emerald Beach.

32. Hudgens received the regular rate of pay for 52.75 hours in his second paycheck for the week ending May 10, 2012. This paycheck compensated Hudgens for 2 weeks of work, one of which was his training period before he was entered into Wyndham's system as a new hire. He recorded less than 40 hours in each of these two work weeks.

**Matthew Jones**

33. Matthew Jones' pay records demonstrate that in the 100 weeks he worked as a Sales Representative/Selling Manager between August 29, 2011 and the termination of his employment, he recorded and was paid the applicable overtime rate of pay in 12 of those weeks. He was paid as much as 9.25 hours of overtime in a single work week.

34. Jones recorded between 38.00 and 40.00 hours worked in 19 work weeks during those 100 weeks.

---

[1] August 29, 2011 is three years prior to the date that the Complaint in the Hudgens v. Wyndham case was filed.

35.  Jones recorded less than 38.00 hours in the remaining 81 weeks that he worked as a Sales Representative/Selling Manager between August 29, 2011 and the termination of his employment.

36.  Jones received the regular rate of pay for 46.00 hours for the week ending April 11, 2013. These 46.00 hours reflect time recorded under 40 hours in the week ending April 11, 2013 and time that was added to Jones' records for the week ending April 4, 2013. Notably, Jones was also paid for 0.75 hours at time-and-one-half the regular rate of pay for the pay period ending April 11, 2013.

**Scott Raven**

37.  Raven also worked as a Selling Manager beginning on March 31, 2012. His pay records indicate that he earned Management Commissions and Sales T.O. Commissions.

38.  Raven worked 105 weeks as an In-House Sales Representative at Emerald Beach Resort between August 29, 2011 and the end of his employment with Wyndham. He recorded more than 40 hours and was paid the applicable overtime rate of pay for his hours over 40 in 16 of those weeks.

39.  Raven recorded between 38.00 and 40.00 hours in 25 of those 105 weeks.

40.  Raven recorded less than 38.00 hours in the remaining 64 work weeks.

41.  Raven's paycheck for the week ending February 9, 2012, reflects 78.25 hours paid at the regular rate of pay. Raven's time records indicate that these 78.25 hours reflect time recorded under 40 hours in the week ending February 9, 2012 and hours that were added to Raven's records for the week ending February 2, 2012.

**Elwyn Smith**

42.  Smith worked 72 weeks between August 29, 2011 and the termination of his employment.

43.     Smith recorded and was paid time-and-one-half the regular rate of pay for 17 of those work weeks. He recorded as much as 11.25 overtime hours in a single work week.

44.     Smith recorded between 38.00 and 40.00 hours in only 2 work weeks.

45.     Smith recorded less than 38.00 hours in the remaining 53 work weeks.

46.     Smith received the regular rate of pay for 60.00 hours and the applicable overtime rate of pay for 0.25 hours in his first paycheck. This paycheck compensated Smith for 2 weeks of work, one of which was his training period before he was entered into Wyndham's system as a new hire.

47.     Smith received the regular rate of pay for 49.75 hours and the applicable overtime rate of pay for 10.00 hours for the week ending August 23, 2012. The 9.75 hours at the regular rate of pay was time that was added to Smith's time for the work week ending August 16, 2012. Even with the added time, Smith recorded only 23.00 hours for the work week ending August 16, 2012.

48.     Smith received the regular rate of pay for 44.75 hours for the week ending May 9, 2013. He recorded 28.00 hours in the week ending May 9, 2013. The additional time reflects pay that was added to his time punches for the week ending April 18, 2013. His time punches for the week ending April 18, 2013 amounted to 35.00 hours including the added time.

**Christina Hammer**

49.     Hammer worked 26 weeks between August 29, 2011 and the termination of her employment with Wyndham.

50.     Hammer recorded between 38.00 and 40.00 hours in only 2 work weeks.

51.     Hammer recorded less than 38.00 hours in the remaining 24 work weeks.

52.     Hammer received the regular rate of pay for 56.50 hours in her first paycheck. This paycheck compensated Hammer for 2 weeks of work, one of which was her training period before

she was entered into Wyndham's system as a new hire. She recorded less than 40 hours in each of these two work weeks.

### Lindsay Rucker

53. Rucker worked 58 work weeks between August 29, 2011 and the termination of her employment. Rucker recorded and was paid for overtime twice. She recorded between 38.00 and 40.00 hours in 3 work weeks. She recorded less than 38.00 hours in the remaining 53 work weeks.

54. Rucker received the regular rate of pay for 70.00 hours in her paycheck for the pay period ending May 10, 2012. This paycheck compensated Rucker for 2 weeks of work, one of which was her training period before she was entered into Wyndham's system as a new hire. She recorded less than 40 hours in each of these two work weeks.

## OVERTIME PAYMENTS TO EMERALD BEACH RESORT SALES STAFF

55. I researched overtime payments made to sales representatives in Emerald Beach Resort's. Wyndham has paid $204,409.55 in overtime payments to sales representatives at Emerald Beach Resort between August 19, 2011 and January 7, 2015.

I declare under penalty of perjury that the foregoing is, to the best of my knowledge and belief, true and correct.

FURTHER AFFIANT SAYETH NAUGHT

Executed on this 12 day of January, 2015.

_____
Jeanie Willis
Payroll Manager